## J. T. Bain v. State.

### No. 2832. Decided March, 1904.

**1.—Confessions—Theft of Cattle—Purpose to Arrest.**

Mere purpose on the part of the officer to arrest a party, where the purpose has not been carried into effect by an actual arrest or when the party does not think himself under arrest, will not render the confession made by the party to the officer incompetent or inadmissible as evidence.

**2.—Same—Conduct of Defendant.**

Testimony as to the conduct of the defendant, when the officer approached him, that he was agitated, was trembling, and about to fall are admissible in evidence.

**3.—Charge of the Court.**

Where the court properly presented appellant's defense with reference to the animal in question, it was not error to refuse a further instruction upon this phase of the case.

**4.—Verdict—Bad Spelling Does Not Vitiate.**

Where the jury returned a verdict as follows: "We the jewors fined the defindet guilty and assess his penish in the Penerty for two year," it is held that the same, when construed in the light of the record is readily comprehended and understood.

Appeal from the District Court of Motley. Tried below before Hon. J. M. Morgan.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The owner of the property testified substantially as follows: "Hodges and I went up to the defendant's house, and when about one hundred yards of the house we saw him come to the door, and go back in the house. We rode up and Hodges hallooed 'Hello!' and defendant came to the door. Hodges told him to come out, that he wanted to see him a minute, and the defendant started out towards us and then stopped, but finally came out to the gate. I introduced the sheriff as Mr. Hodges, and Hodges then said, 'We came to inquire of you about a beef that has been killed up in the pasture and thought you could give us some information.' Defendant said that he did not know whether he knew anything about it. Hodges then said, 'We have tracked a wagon from where the beef was killed, here in the sand hills, to your place, and we thought that you could tell us something about it.' Defendant then said, 'I killed that cow; who has lost one?' Hodges answered that Mr. Simpson had. Defendant said, 'By God, Simpson, I don't want you coming around here accusing me; I did not kill your damn cow; I did kill that cow up in the sand hills, but it was my father's cow, if you must know, and was branded Bain.' Defendant during this conversation stood in the gate and held to the wire that connected the two gate posts at the top; his hands and knees were trembling, and he looked pale and showed to be excited. Hodges then asked defendant if he had the hide of the cow that he had killed, and he said he had a part of it. He then showed us a portion of the hide that he had staked down in the back yard. This portion of the hide was from the right

side of the cow; the branded side was gone; the ears were gone. I spread the hide and stood on it and examined it, and told defendant it was a portion of my cow's hide. Defendant hung his head, and said, 'You are mistaken, Simpson; it is not your cow's hide,' and commenced to curse and abuse me. Hodges then asked defendant what he had done with the balance of the hide. Defendant answered that he had bottomed chairs with it. Hodges then asked him where were the chairs that he had bottomed. Then he said, 'By God, I did not say that I had bottomed chairs with it, but that I had cut it up to bottom chairs with.' Hodges then told the defendant to let us see the strips and he said he had used the strips up, and Hodges then asked for the head. Defendant said it was in the hog pen, which was under the crib, and we went to the crib and found the head, and when I saw and examined it I said, 'Mr. Bain, that is my cow's head, and if I have to be shot for it I would have to swear to it.' "

This testimony was substantially corroborated by Hodges, the sheriff.

Defendant tried to show by several witnesses that the animal he killed was one of the animals his father gave him.

As to the arrest the sheriff testified that after the defendant had made the above statement to him and Simpson, he told defendant that he would have to go to town with him, warning him that anything he might say would be used against him, and defendant said no more about the case. Up to that time the sheriff stated he had not arrested the defendant, but had gone there intending to arrest him if Simpson identified the head and hide as that of his cow. Other essential facts appear in the opinion.

*G. E. Hamilton* and *Kinder & Dalton,* for appellant.—If the party against whom statements are sought to be used is under arrest, or if he believes himself to be under arrest, or is conscious of being under restraint, at the time of the statements, they should be excluded. Wood v. State, 22 Texas Crim. App., 431; Nolen v. State, 9 Texas Crim. App., 419; Jones v. State, 71 S. W. Rep., 962; Bennett v. State, 25 Texas Crim. App., 695.

The testimony as to defendant's appearance and actions was only the opinion of the witnesses and not admissible, and prejudicial to the defendant. Fulcher v. State, 28 Texas Crim. App., 465; Walker v. State, 28 Texas Crim. App., 112; Wood v. State, supra.

If the testimony raises the issue as to whether a defendant was under arrest or restraint, or thought he was, when he made certain statements or acted in a certain way and maintained silence when certain statements were made in his presence, it is the duty of the court to submit this issue as to the admissibility of the statements, etc., and refusal to do so is error.

Appellant asked the court to give in charge to the jury, and the court

refused, the following charge: "The court charges the jury that if they believe from the evidence that defendant was under arrest or thought himself to be under arrest by Sheriff Hodges, when Hodges and Simpson went up to his house and had the conversation with him as testified to by them, you will disregard and not consider any statement made by defendant to them which appears in evidence." Morris v. State, 46 S. W. Rep., 253; Rains v. State, 33 Texas Crim. Rep., 294; Willis v. State, 44 S. W. Rep., 826.

On the question of the form of verdict: Keeler v. State, 4 Texas Crim. App., 527; Haney v. State, 2 Texas Crim. App., 504.

*Howard Martin,* Assistant Attorney-General, and *Cowan & Burney,* for the State.—On question of confession: Holmes v. State, 32 Texas Crim. Rep., 361.

The statements of the defendant to the sheriff and the owner of the animal on the morning of his arrest at his house were admissible for the reason that in connection with the conversation he made statements of facts which were found to be true, which conduced to establish his guilt, and under the statute this makes any sort of confession admissible even though the defendant may have been under arrest and not warned. Code Crim. Proc., art. 790; Waller v. State, 16 Texas Crim. App., 200.

On question of res gestae: Powers v. State, 23 Texas Crim. App., 42; Phillips v. State, 19 Texas Crim. App., 158; Harmon v. State, 3 Id., 51. On question of form of verdict: McGee v. State, 45 S. W. Rep., 709.

BROOKS, JUDGE.—Appellant was convicted of theft of cattle, and his punishment assessed at confinement in the penitentiary for a term of two years. This is the second appeal. See 7 Texas Ct. Rep., 899.

Appellant complains of the refusal of the court to exclude the testimony of B. W. Simpson and J. H. Hodges. The testimony of these witnesses as disclosed in this record is substantially the same as stated in the original opinion on the first appeal of this case. Appellant urges the same objections here. In the former appeal we held this testimony was admissible because it did not show appellant was under arrest. Through inadvertence in writing the former opinion we placed in juxtaposition to the statement of the conversation that occurred between the sheriff and Simpson and appellant this statement: "Appellant stated that when he started on the call of the sheriff from the house to the gate, he thought the sheriff had come to arrest him on account of a difficulty, or as he terms it, a 'feud,' that had occurred at his house a few days previously, as he had been threatened with arrest on this account, thus excluding the idea that he was anticipating any trouble with reference to the cow. He attributes his excitement to fear of arrest for the difficulty." This statement should not have been coupled

the witnesses and appellant; and we did not intend to be understood as holding, as appellant's counsel now insist, that the fact that appellant apprehended arrest for another offense, than the one he is now being prosecuted for, would authorize the introduction of the testimony; but what we intended to hold was that the facts as disclosed by with the recital of the facts leading up to the conversation between the bill of exceptions did not show that appellant was under arrest, or thought himself under arrest, at the time of the conversation detailed by said witnesses. In placing the statement as above, we were merely stating appellant's insistence. If he was anticipating arrest for another and different offense than the one he was arrested for, this per se would not preclude the conclusion that he was under arrest at the time of the conversation detailed by the witness. If he was under arrest, or thought or believed he was under arrest, under the authorities, the statement would not be admissible. But the facts preclude either of these conclusions, and show he was not only not under arrest, but that he did not think he was under arrest. In Connell v. State, 75 S. W. Rep., —, 45 Texas Crim. Rep., 142, we held that the appellant in that case was not under arrest, under circumstances much like those now under consideration. Mere purpose on the part of an officer to arrest a party, where the purpose has not been carried into effect by an actual arrest, will not render the confession made by the party to the officer incompetent or inadmissible as evidence. Or where the evidence clearly shows, as it does in this case, that appellant did not think himself under arrest, the statement would be admissible. Holmes v. State, 32 Texas Crim. App., 361. Accordingly we hold the testimony of these witnesses was admissible, and the court did not err in admitting it.

Appellant also insists in the above bills that the court erred in permitting Hodges and Simpson to testify that, at the time they approached the house and begun the conversation with defendant, defendant held to the wire over the gate, and was trembling badly, and seemed that he was about to fall; his knees were trembling and shaking, scarcely able to stand, and he turned very pale. Appellant objects to this portion of the statement on the ground that it is a conclusion of the witnesses. We take it that this is a short-hand rendering of the facts, and was properly admitted.

Appellant insists that the court erred in refusing the following special charges, to wit: "The court charges the jury, if they believe from the evidence that defendant was under arrest, or thought himself to be under arrest by sheriff Hodges, when Hodges and Simpson went to his house and had the conversation with defendant as testified by them, you will disregard and not consider any statement made by defendant to them which appears in evidence." It follows from what has been said above that it was not error to refuse this charge, since the evidence clearly shows appellant was not under arrest; nor does the evidence

raise any issue on this question. The facts show conclusively that appellant was not under arrest.

And the court also refused this instruction: "The jury will not consider as evidence showing defendant's guilt as to the animal alleged, any testimony as to defendant's killing any other animal; but such testimony will only be considered by you for the purpose for which it was introduced, i. e., as bearing or not on the question of the intent of defendant with which he killed the animal in question; and you will consider it for no other purpose." There was no error in the refusal of this charge. The court properly presented appellant's defense, if the animal in question was the animal appellant claimed, to wit, the Bain cow, or if they had a reasonable doubt as to whether it was the Bain cow to acquit appellant. This was as favorable to appellant as he could ask.

Appellant also objects to the form of the verdict of the jury, which is as follows: "We the jewors fined the defindet guilty and assess his penish in the Penerty for two year. Steve. Daffern, Foreman." It has been held that bad spelling will not vitiate the verdict of the jury. The verdict, in our opinion, when construed in the light of the record, is readily comprehended and understood. It would not mean otherwise than that the jury found defendant guilty and assessed his punishment at two years confinement in the State penitentiary. As appellant insists, words in the verdict are misspelled; but the clear legal intendment and purpose is made manifest. McGee v. State, 45 S. W. Rep., 709. The proper judgment was entered, confining appellant in the penitentiary for a term of two years.

No error appearing in the record requiring a reversal, the judgment is affirmed.

*Affirmed.*